# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **Tina Wise**<br>116111 Holbrook<br>Uniontown, OH 44685<br><br>   Plaintiff,<br><br> -vs.-<br><br>**Children's Hospital Medical Center of Akron**<br>c/o Christopher Gessner<br>One Perkins Square<br>Akron, OH 44308<br><br>   Defendant. | CASE NO.: 5:22-cv-2092<br><br>**JUDGE:**<br><br>**COMPLAINT FOR RELIGIOUS DISCRIMINATION UNDER 42 U.S.C. § 2000e**, *et seq*.<br><br>**JURY DEMAND ENDORSED HEREON** |

For her Complaint against Defendant Children's Hospital Medical Center of Akron, operating under the registered trade name "Akron Children's Hospital," Plaintiff Tina Wise states:

## INTRODUCTION

1. Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII") by failing to provide Plaintiff with required religious accommodation and by failing to engage in an interactive process to determine and provide reasonable accommodation.

2. This suit seeks to remedy Defendant's statutory violations and discrimination against Plaintiff who requested a religious accommodation from Defendant's mandate that she conduct weekly COVID-19 testing whether or not she was symptomatic for illness.

3. Rather than comply with its obligations under Title VII, Defendant threatened to terminate Plaintiff if she did not comply with weekly asymptomatic testing, and terminated Plaintiff for failure to do so.

4. Defendant's statutory violations, discrimination, and retaliation left Plaintiff with the choice of conducting weekly asymptomatic testing for COVID-19 in violation of her sincerely held religious beliefs or losing her job.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e.

6. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

7. Plaintiff Tina Wise lives in Uniontown, Ohio and worked as a Staff Pharmacist at the Akron Campus Inpatient Pharmacy for Akron Children's Hospital, a pediatric acute care hospital in Northeast Ohio.

8. Defendant Children's Hospital Medical Center of Akron, known as "Akron Children's Hospital," is a pediatric acute care hospital in Northeast Ohio that provides care to infants, children, adolescents, young adults, and some older adults. Defendant is headquartered in Akron, Ohio.

## FACTUAL ALLEGATIONS

9. Plaintiff worked at Akron's Children's Hospital ("ACH") for over 23 years with a hiring date of April 12, 1999.

10. During her employment at ACH, Plaintiff was an employee in good standing and, without exception, received annual performance evaluations of "meets/exceeds expectations."

11. As an ACH staff pharmacist, Plaintiff had essentially no contact with patients and only limited direct contact with pharmacy staff or occasionally housekeeping. She entered an employee entrance close to her department, worked in a locked department for the entirety of her shift, and spent dinner breaks alone in a conference room. The staff was required to social distance within

the pharmacy during the COVID-19 pandemic. ACH limited the number of employees allowed in the break or conference rooms at any time to enable social distancing.

12. Upon information and belief, Defendant ACH first mandated weekly alternative testing almost two (2) years into the Pandemic and mandated it only for asymptomatic unvaccinated employees. Contrarily, ACH did not require testing for vaccinated employees, even if they were symptomatic.

13. Upon information and belief, Plaintiff is one of a very limited group of individuals requesting religious exemption from the alternative testing mandate.

14. For almost a decade (2013-2021), Plaintiff annually requested and was approved for religious accommodation to ACH vaccine mandates. In her first exemption request, dated October 10, 2013, Plaintiff stated that her long held religious beliefs regarding medical intervention on the healthy prevented her from receiving vaccines. Medical intervention for the healthy shows a misplaced trust and lack of faith in God and violates her deeply held religious beliefs. Providing supporting scriptures, Plaintiff explained that medical intervention should only be used to cure those who are sick or to alleviate suffering and not on healthy people.

15. On February 9, 2022, Plaintiff became symptomatic for Covid-19. She ordered a home test and two (2) days later tested positive at home. Defendant then required Plaintiff to test onsite at the hospital--Plaintiff was confirmed positive. Per her supervisor's instructions, Plaintiff worked remotely February 14, 2022 through February 16, 2022.

16. On February 13, 2022, Plaintiff was provided an estimated return to work date of February 17, 2022 and a return to testing date of May 12, 2022.

**A. Defendant's Vaccine or Alternative Testing Mandate**

17. Courageous front-line workers at Akron Children's Hospital such as Plaintiff were exposed to SARS-CoV-2 daily over the last two years. This exposure led to robust natural immunity that let them continue to serve the community. Recognizing the strength of this natural immunity, the Centers for Disease Control and Prevention (CDC) acknowledged those who recover from SARS-COV-2 have greater protection against new infection than those who are only vaccinated.[1]

18. ACH Chief Executive Officer Grace Wakulchik ("CEO WAKULCHIK") announced on August 16, 2021, that all employees and new hires must be fully vaccinated for COVID-19 or accept at a minimum alternative weekly COVID-19 testing. No effective date was set for the requirement.

19. On October 6, 2021, CEO WAKULCHIK notified staff of an effective date of November 1, 2021 for the vaccine or alternative testing requirement.

20. On October 22, 2021, the office of Chief Human Resources Officer Rhonda Larimore ("LARIMORE") emailed staff on how to submit a medical or religious exemption specifically from the testing alternative mandate with a deadline of November 7, 2021. The email had an online link to the *COVID-19 Testing Exemption Statement* with a completion deadline of 5:00 P.M. on November 7, 2021.

21. On November 10, 2021, new CEO Christopher Gessner ("CEO GESSNER") emailed staff that ACH would change its recently announced COVID-19 Related Employment Requirements policy.

22. In an email dated December 1, 2021 from CEO GESSNER, Defendant set a final deadline of January 11, 2022 for full vaccination or approval of an exemption. Those failing to comply

---

[1] https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1_w

would be terminated. The exemption process was officially closed, and notifications regarding exemption status were set for end of day December 3, 2021. The unvaccinated were instructed to schedule weekly testing.

23. When Defendant originally announced the vaccine or alternative testing mandate, it provided employees with a method to request religious or medical accommodation consistent with U.S. Equal Employment Opportunity Commission (EEOC) guidance on private employers issuing such mandates. §§ K.1 & K.2., EEOC (Updated July 12, 2022).[2]

24. Contrary to CMS and EEOC guidance, however, ACH's alternative testing mandate was effectively absolute on the unvaccinated seeking religious exemption from it. No reasonable accommodation from the testing alternative was offered regardless of the sincerity of religious beliefs contrary to the testing requirements. For example, on January 27, 2022, Defendant denied Plaintiff her testing exemption stating the denial was "regardless of whether the testing requirement actually conflicts with a sincerely held religious belief."

**B. Federal Law Prohibiting Religious Discrimination and Retaliation**

25. Title VII requires employers to offer reasonable accommodation to a requested religious exemption absent demonstration of undue hardship on their business. Failure to do so is an unlawful employment practice. 29 C.F.R. § 1605.2 (b)(1) (Up to date as of October 25, 2022).[3]

26. Title VII prohibits Defendant from discriminating against employees based on religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's […] religious

---

[2] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws
[3] https://www.ecfr.gov/ current/title-29/subtitle-B/chapter-XIV/part-1605/section-1605.2#1605.2-footnote-2

observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

27. In other words, "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees but is not required to incur undue hardship." *Weber v. Roadway Express*, 199 F.3d 270, 273 (5th Cir. 2000).

28. Title VII also prohibits ACH from retaliating against employees for engaging in protected activity. See *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).

29. Participation in an EEOC Complaint process is protected from retaliation under "all circumstances." § M.4, EEOC (Updated July 12, 2022).[4]

30. EEOC guidance on Title VII and the COVID-19 pandemic provides that employers should "thoroughly consider all possible reasonable accommodation." Some examples of reasonable accommodation to vaccination include wearing a mask, social distancing, and offering telework. *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* §§ K.1, K.2, K.12., EEOC (Updated July 12, 2022).[5]

31. Although Defendant offered employees religious or medical disability exemptions and reasonable accommodations to both the vaccine and the alternative testing mandate, upon information and belief similarly situated employees' requests for religious exemption to the alternative testing mandate were treated differently and processed in a discriminatory compared to other exemption and accommodation requests.

---

[4] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws
[5] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]

### C. Defendant's Accommodation Request System

32. Defendant created methods for employees to request accommodation for exemption from Defendant's vaccine or alternative testing mandate.

33. Employees could request accommodation from both the vaccine and alternative testing for religious or medical reasons.

34. Requests for reasonable accommodation to alternative weekly testing had to be submitted by November 7, 2021.

35. The process to request a vaccine exemption officially closed on December 1, 2021.

### D. Plaintiff's Accommodation Requests and Defendant's Responses

36. On or about September 9, 2021, Plaintiff proactively submitted her first religious accommodation request to Defendant's COVID-19 vaccine and alternative testing requirement via certified mail to LARIMORE and to ACH Human Resources Business Partner Mary Reihs ("REIHS"). Plaintiff attached a copy of her October 10, 2013 letters detailing the basis for her religious belief against medically intervening on the healthy.

37. In her request, Plaintiff stated that her long-held sincere religious beliefs regarding medical interventions on the healthy prevented her from receiving either the COVID-19 vaccine or conducting weekly asymptomatic COVID-19 testing. Providing supporting scriptures that only the sick need a physician, Plaintiff explained that medical intervention should only be used to cure those who are sick or to alleviate suffering and not on healthy people. Medical intervention on the healthy shows a misplaced trust and a lack of faith in God and violates her long and deeply held religious beliefs.

38. On September 15, 2021, Plaintiff followed up by emailing her religious accommodation request to LARIMORE and to REIHS, attaching copies of her above exemption request letters dated September 9, 2021.

39. Two weeks later, on September 29, 2021, Plaintiff emailed LARIMORE and REIHS requesting a status update on her religious accommodation requests. LARIMORE responded that details on the process would be forthcoming in several weeks.

40. On September 30, 2021, Plaintiff emailed both LARIMORE and REIHS a third time asking about the sufficiency of her exemption requests and whether she needs to resubmit. On October 5, 2021, LARIMORE responded that the exemption process is not yet finalized, and Plaintiff must resubmit through the process when announced.

41. On October 11, 2021, LARIMORE informed Plaintiff that she forwarded Plaintiff's email exemption request to the correct email address, and Plaintiff would not need to do anything further after the process is announced.

42. On October 15, 2021, Plaintiff received an email from Human Resources Regulatory Specialist Christine Cunningham ("CUNNINGHAM") confirming they received Plaintiff's exemption request and would send her a determination at the end of October.

43. On October 22, 2021, Plaintiff restated her request for exemption from both the vaccine and weekly COVID-19 testing in an email to Chief Operating Officer Lisa Aurilio ("AURILIO"), LARIMORE, REIHS AND CUNNINGHAM. LARIMORE commended Plaintiff for being proactive and responded that a standard form and instructions will be announced that same day for completion and submission. Plaintiff expressed her desire to complete the form and have everything resolved before the October 31, 2021 deadline. LARIMORE emailed Plaintiff that they now needed the signed form due to signature requirements.

44. Later that same day, LARIMORE emailed staff an online link to the *COVID-19 Testing Exemption Statement* for accommodation requests specifically from alternative testing with a due date of 5:00 P.M. on November 7, 2021.

45. On October 23, 2021, Plaintiff submitted her completed *COVID-19 Testing Exemption Statement*, emailing the signed form to Human Resources and receiving an automatic reply.

46. On November 20, 2021, Plaintiff submitted her vaccine exemption request via the online portal and received an automated response.

47. On November 24, 2021, LARIMORE emailed Plaintiff that she still had Plaintiff's exemption documents and wanted to ensure Plaintiff is applying via the mKn (myKidsnet) portal. Plaintiff confirmed that she completed the *COVID-19 Vaccine Exemption* request via the online portal and asked if she needed to do anything else. LARIMORE responded "Great. Just wanted to make sure!"

48. On December 3, 2021, Plaintiff received her vaccine exemption approval from LARIMORE's office but was instructed to submit to COVID-19 testing "consistent with the policy for unvaccinated employees." Her request for a religious exemption from alternative testing was not addressed.

49. On December 5, 2021, Plaintiff emailed LARIMORE and requested confirmation that her alternative testing exemption was also approved per her September letter request and her previously submitted *COVID-19 Testing Exemption Statement*.

50. On December 7, 2021, the Covid Exemptions Review Team ("CERT") told Plaintiff testing was the accommodation for religious and medical exemption from the vaccine. In response, Plaintiff emailed CERT, reminding them that she requested a religious accommodation to the vaccine and testing, and requested a meeting to discuss.

51. On January 21, 2022, CERT emailed Plaintiff that she must test in lieu of vaccination. Failure to do so would result in progressive disciplinary action, up to and including termination. Plaintiff emailed CERT and several others stating that she requested an accommodation to vaccination and testing under Title VII. Plaintiff stated that she "welcome(s) an opportunity" to discuss this with them and was "'cc'ing an Attorney Rachel Citak in advance of that discussion… to be aware of our communications and aid in the EEOC/Title VII process." Plaintiff received out of office responses from LARIMORE and REIHS.

52. On January 27, CERT told Plaintiff in an email that her testing exemption was denied "regardless of whether the testing requirement actually conflicts with a sincerely held religious belief" because exemption of unvaccinated onsite staff members was allegedly an undue hardship.

53. On January 30, 2022, Plaintiff's attorney Rachel Citak emailed a letter that Plaintiff's request for a religious accommodation to the testing was an accommodation request "in its own right" and failure to provide it short of undue hardship was an illegal employment practice. She stated in part: "It is unclear what circumstances place Akron Children's in such a unique situation that one employee's religious beliefs could cause more than a de minimis hardship."

54. On February 8, 2022, an attorney for Defendant responded that it would create an undue hardship for Plaintiff to test only when symptomatic.

55. On May 25, 2022, following the "return to testing" date of May 12, 2022, CHAPMAN asked Plaintiff onsite in the Pharmacy when she would test for the week. After Plaintiff responded that she would not test unless sick, CHAPMAN stated that she would have to inform "John." Plaintiff then emailed a "Complaint of Religious Discrimination" to LARIMORE, LARIMORE's assistant, CHAPMAN, new Human Resources Business Partners Bryan Sallee ("SALLEE") and Kyle Grimm ("GRIMM"), John Standish, and John Lepto (all parties listed herein referred to as

"GROUP"). LARIMORE informed Plaintiff via email that "there are no plans to revisit the policy generally or in response to your specific request. As with all other Akron Children's employees with approved COVID-19 vaccine exemptions, compliance with the policy is required for continued employment."

56. On May 26, Plaintiff emailed LARIMORE and copied GROUP, expressing her disappointment at the response and LARIMORE's unwillingness to "discuss this serious civil rights violation" since EEOC policy requires all discrimination complaints to be referred to Human Resources. LARIMORE responded that she reviewed Plaintiff's request and ACH was not changing its policy.

57. On May 27, 2022, Plaintiff emailed LARIMORE and GROUP expressing her disappointment at Defendant's unwillingness to change its COVID-19 policy and stop discriminating against a religious minority of employees.

58. On or about June 1, 2022, CHAPMAN called Plaintiff on her day off to give her a verbal warning and then emailed her a Conduct/Performance Written Warning for failure to test for the week ending 5/28/22.

59. On June 2, 2022, Plaintiff emailed CHAPMAN and copied GROUP requesting an in-person meeting to discuss a resolution of her request and the policy items she asked them to consider with the goal of continuing her employment at ACH.

60. On June 6, CHAPMAN conducted an in-person meeting with Plaintiff to issue a Conduct/Performance Final Warning for failure to comply with weekly testing for the week ending 6/6/22. CHAPMAN did not discuss or seek reasonable accommodation for Plaintiff's alternative testing exemption request.

61. On June 7, 2022, Plaintiff emailed LARIMORE and GROUP and made her final appeal to Defendant's final warning. She urged Defendant to meet with her in accord with federal law.

62. On June 8, 2022, SALLEE responded and asked Plaintiff: "If you have alternatives that you could provide other than remaining unvaccinated, while continuing in your role without testing, please reply with them by the end of the day Thursday."

63. On June 9, 2022," Plaintiff emailed SALLEE and GROUP that, as an alternative, she would continue to mask even if ACH lifted its mask mandate and offered to discuss it further. SALLEE responded and copied the GROUP that Plaintiff "did not offer any new suggestions," and they would move forward with disciplinary action. Plaintiff responded with an email reiterating ACH's failure to follow standard required EEOC process, pointing to the severe time constraints placed on her response while she was working two (2) back-to-back 10-hour shifts, stating that she did "offer up a new suggestion" and would continue with the EEOC inquiry process.

64. On June 14, 2022, CHAPMAN emailed and called Plaintiff to tell her she was terminated. The next day, Plaintiff turned in her badge, pharmacy narcotic keys and locker key to CHAPMAN.

**E.  EEOC filing and Plaintiff's right to sue**

65. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") raising the issues in this Complaint.

66. The EEOC issued Plaintiff a Notice of Right to Sue on August 24, 2022.

## COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Failure to Accommodate

67. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

68. Plaintiff's long-held sincere religious beliefs prevent her from receiving either a COVID-19 vaccine or conducting weekly COVID-19 testing when exhibiting no symptoms of illness.

69. Plaintiff informed Defendant of those beliefs and requested accommodation from the vaccine and weekly testing on religious grounds. These are the same religious grounds upon which she has based her vaccine exemption requests from ACH for the last nine (9) years.

70. Defendant approved an exemption from the vaccine mandate but denied Plaintiff's request for religious accommodation on weekly testing.

71. Although Plaintiff stated her willingness to comply with alternative measures such as continuous masking and repeatedly sought resolution, Defendant failed to engage in an interactive process with Plaintiff regarding her request for religious accommodation. Plaintiff contacted Defendant about her exemption request at least 17 times, specifically asking for a meeting no less than five (5) times. Defendant responded to Plaintiff's attempts at resolution with a blanket denial and ignored mitigating factors such as the limited number of individuals requesting exemption from alternative testing, lack of direct contact with the public and social distancing policies within Plaintiff's department.

72. Defendant did not provide Plaintiff with reasonable accommodations for her sincerely held religious beliefs.

73. Defendants discriminated against Plaintiff because of her religious beliefs.

74. Defendant's failure to provide religious accommodation has harmed and will continue to harm Plaintiff.

75. By failing to engage in the interactive process or offer any reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Retaliation

76. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

77. Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine and alternative testing mandate.

78. Defendant first responded by developing methods for requesting religious exemption both from the vaccine and alternative testing.

79. Defendant later adopted a posture of ignoring Plaintiff's accommodation request regarding alternative testing and ultimately responded with a blanket denial.

80. Defendant responded to Plaintiff's protected activity by giving Plaintiff the false choice between weekly testing and effective termination.

81. Plaintiff's religious beliefs and protected activity were the causes of Defendant's adverse employment action. Defendant did not engage in an interactive process with Plaintiff because Defendant never intended to provide Plaintiff with accommodation to weekly testing even if it conflicted with Plaintiff's "sincerely held religious belief." Defendant's disregard and disparate treatment of religious accommodation requests for exemption from weekly asymptomatic testing confirms Defendants' hostility to requests for religious accommodation.

82. Defendant retaliated against Plaintiff by terminating Plaintiff's employment in response to Plaintiff engaging in protected activity.

83. By retaliating against Plaintiff for engaging in protected activity, Defendant violated Title VII. This violation harmed and continues to harm Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court award her:

a.  Damages including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

b.  Injunctive relief.

c.  Reasonable attorneys' fees and costs.

d.  Any other relief that the Court considers just, proper, and equitable.

Respectfully submitted,

**MENDENHALL LAW GROUP**

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Brian Unger (0096884)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
brian@warnermendenhall.com
warner@warnermendenhall.com

*Attorneys for Plaintiff*

**JURY DEMAND**

A trial by jury is demanded for all issues so triable.

Respectfully Submitted,

/s/ Warner Mendenhall
Warner Mendenhall (0070165)